SLIP OPINION

Cite as 2017 Ark. 207

# SUPREME COURT OF ARKANSAS

No. CR-16-720

| | |
|---|---|
| KENNETH HINTON<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** March 30, 2017<br><br>APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT [NO. 40CR-13-13]<br><br>HONORABLE JODI RAINES DENNIS, JUDGE<br><br><u>AFFIRMED</u>. |

**KAREN R. BAKER, Associate Justice**

On June 7, 2013, appellant, Kenneth Hinton, was charged with one count of battery in the first degree and one count of battery in the second degree. The charges stem from a disturbance at the Varner Unit of the Arkansas Department of Correction (hereinafter "ADC") on October 28, 2012, in which Hinton and other inmates were involved. Hinton was charged in the disturbance for injuring Warden Joe Page and correctional officer Stephen Simmons. On December 14, 2014, the case was tried and resulted in a mistrial. On April 25, 2016, the matter proceeded to trial for a second time, and a Lincoln County jury convicted Hinton of one count of first-degree battery and one count of second-degree battery and sentenced him to thirty years' imprisonment and fifteen years' imprisonment respectively.

At trial, the testimony demonstrated that ADC Warden Joe Page and ADC Correctional Officer Stephen Simmons were physically injured. Simmons testified that on

October 28, 2012, he was working at the Varner Unit as a shift lieutenant. On the day of the incident, a riot began as inmates started to leave the chow hall and the inmates started to fight each other and correctional officers. Simmons further testified that during the riot, Hinton struck him in the back of the head. Kenneth Ridgell, Field Rider at the ADC, testified that on the day of the incident, he witnessed Hinton "blind side" Page and hit Page with a closed fist; Page fell forward unconscious.

The case first proceeded to trial and ended in a mistrial on December 15, 2014. On June 4, 2015, the circuit court entered a scheduling order setting a new trial date for October 26–29, 2015. On that same date, a second scheduling order was entered setting the new trial date for November 17–19, 2015. On October 9, 2015, Hinton filed a motion to continue the October 26, 2015 trial date asserting that he had not received notice of the trial date and was not available for trial and was aware only of the November 2015 trial date. On November 19, 2015, the circuit court entered a revised scheduling order, granting Hinton's motion for continuance and resetting the trial for April 25–27, 2016.

On April 20, 2016, Hinton filed a motion to dismiss alleging a speedy-trial violation. On April 21, 2016, the circuit court denied the motion to dismiss. On April 25, 2016, the matter proceeded to trial for a second time, and Hinton was convicted and sentenced as described above. On May 16, 2016, the circuit court entered a judgment and commitment order.

On May 26, 2016, Hinton timely appealed to the court of appeals. On February 8, 2017, we accepted certification of this case. Hinton presents two issues on appeal: (1) the

SLIP OPINION

circuit court erred in denying Hinton's motion to dismiss based on an alleged speedy-trial violation and (2) the circuit court erred in denying Hinton's motion to appear in civilian clothing.

## I. *Points on Appeal*

### A. Speedy Trial

For his first point on appeal, Hinton asserts that the circuit court erred when it denied his motion to dismiss based on an alleged speedy-trial violation. Because this court conducts a de novo review on appeal to determine whether specific periods of time are excludable under the speedy-trial rules, we discuss the relevant time periods below. *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007).

Pursuant to Arkansas Rule of Criminal Procedure 28.1(b) (2016), any defendant charged with an offense and incarcerated in prison in this state pursuant to conviction of another offense must be brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3. Ark. R. Crim. P. 28.2(c) requires that if a defendant is retried after a mistrial, the time for trial shall commence to run from the date of mistrial. Next, in calculating the speedy-trial period, necessary periods of delay are excluded as authorized in Ark. R. Crim. P. 28.3. Under Rule 28.3(c), the period of delay resulting from a continuance granted at the request of the defendant or his counsel is excluded. All continuances granted at the request of the defendant or his counsel shall be to a day certain, and the period of delay shall be from the date the continuance is granted until such subsequent date contained in the order or docket

3

entry granting the continuance. Also, the period of time when a defendant's motion for continuance is pending is a period properly excluded under Ark. R.Crim. P. 28.3(a). *See Dodson v. State*, 358 Ark. 372, 382, 191 S.W.3d 511, 517 (2004). Once it has been determined that the trial took place outside the speedy-trial period of twelve months, the State bears the burden of proving that the delay was the result of the defendant's conduct or was otherwise legally justified. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000).

We turn to review the excludable time period in Hinton's case. At issue is the circuit court's April 21, 2015 denial of Hinton's motion to dismiss:

> The case was first tried on December 15, 2014. . . . The defendant moved for a mistrial and it was granted.
>
> . . . .
>
> The case was reset for jury trial on October 26–29, 2015. The 315 days from December 15, 2014, until October 26, 2015, is included in the calculation for speedy trial.
>
> . . . .
>
> On October 9, 2015, the defendant filed a motion to continue the October jury trial. . . . The scheduling order resetting the trial for April 25–27, 2016, excluded from speedy trial the time between trials.
>
> Although more than 365 days have elapsed since December 15, 2014, excluded periods decrease the number of days to 315.

Hinton contends the circuit court's ruling is erroneous. The crux of Hinton's speedy-trial argument is that when the circuit court set the October and the November 2015 trial dates, Hinton was to be tried separately on the two different charges. Further, Hinton argues, because the circuit court did not continue the separate November trial date or enter

an order regarding the November trial date, but only addressed the October 2015 trial, the State failed to bring Hinton to trial within the required 12-month time period and violated his right to speedy trial.

We disagree with Hinton. Applying our rules discussed above, the time period began to run from the date of the mistrial, December 15, 2014, until Hinton filed his motion for continuance on October 9, 2015, and tolled the time period. This time period totals 299 days. Next, on November 19, 2015, the circuit court entered an order granting the continuance and setting the trial date for April 25, 2016. Thus, the time period was tolled further from the October 9, 2015 motion for continuance until the November 19, 2015 order, when the circuit court granted the continuance. Also, the time period continued to be tolled from the circuit court's order granting the continuance on November 19, 2015 until the trial date on April 25, 2016. In sum, from the date of the mistrial, December 15, 2014, until the date of Hinton's trial, April 25, 2016, 497 days had accrued. However, pursuant to our rules discussed above, the time period from October 9, 2015, until April 25, 2016 was tolled because of Hinton's motion for continuance. Accordingly, 199 days are excluded from the twelve-month requirement and there were 298 days from the date of mistrial until Hinton's trial date.

Finally, we must note that we do not find merit in Hinton's argument regarding the November 2015 scheduling order. The record demonstrates that the State charged Hinton with one criminal information and the charges were not severed. The two scheduling orders have the same case number and identical language, with the exception of the trial dates and

excluded periods. Further, Hinton's motion for continuance stated:

> On June 4, 2015, the Court entered a scheduling order resetting this case for trial on November 16, 2015. This notice was received by counsel for Hinton, and the trial date was placed on undersigned counsel's calendar.
>
> On October 5, 2015, counsel spoke to Wayne Juneau, attorney for the State, regarding the trial setting. Mr. Juneau was inquiring about the possibility of combining the November 16 trial date with the trial set on October 26, 2015. Counsel for Hinton was unaware of the October 26th trial date.
>
> A review of the docket for this case shows that two scheduling orders were entered almost simultaneously on June 4, 2015. Both scheduling orders reference the same case number. There is no indication that there has been a severance of the charges against Mr. Hinton.
>
> . . . .
>
> Trial preparation is not complete . . . [and] [counsel] has one federal criminal jury trial which conflicts with the October 26th date. . . . Counsel does not believe it will be possible to adequately prepare for the trial before October 26, 2015.

Here, Hinton's argument fails for three reasons. First, the charges were never severed. Second, Hinton expressly acknowledged that the charges were not severed and his counsel was unavailable for the trial, not multiple trials. Third, the circuit court's order granting Hinton's motion for continuance was entered on November 19, 2015, after the November 16, 2015 trial date. If the trial had been conducted on the November 16 trial date, the circuit court would not have entered the November 19 continuance order. Accordingly, the November 2015 trial date was encompassed in the November 2015 continuance order resetting the trial for April 2016. Therefore, based on our discussion above and our standard of review, we do not find error and affirm the circuit court.

SLIP OPINION

B. Prison Garb

For his second point on appeal, Hinton asserts that the circuit court erred in denying Hinton's motion to appear in civilian clothing. On the morning of trial, relying on *Box v. State*, 348 Ark. 116, 71 S.W.3d 552 (2002) and *Flores v. State*, 350 Ark. 198, 85 S.W.3d 896 (2002), Hinton filed a motion to appear in civilian clothes, which was denied by the circuit court. During the pretrial hearing, Hinton renewed his motion to wear civilian clothing. The State objected, contending that Hinton was incarcerated for serious offenses, that the trial also concerned serious offenses, and that no prejudice would result from Hinton wearing his white prison uniform. The circuit court denied Hinton's motion.

In reviewing a motion to wear civilian clothing, our standard of review is whether the circuit court abused its discretion in denying the motion. *Box*, *supra*.

On appeal, Hinton contends that this court's holding in "*Box* is clear and unequivocal . . . The rule is absent a waiver, a criminal defendant may not be tried in prison garb." Hinton further contends that he did not waive his rights, and he was prejudiced by the circuit court's denial of his request. We disagree based on the discussion that follows.

With regard to wearing prison garb at trial, *Miller v. State*, 249 Ark. 3, 5, 457 S.W.2d 848, 849 (1970), is our seminal case holding that absent a waiver, a defendant may not be forced to wear prison garb. In *Miller*, pending trial, Miller was held in the penitentiary, and, on the day of trial, Miller was transferred to the Pulaski County jail. Prior to the commencement of the trial, Miller requested to wear civilian clothing, and the circuit court denied his motion. On appeal, we reversed the circuit court because Miller had not waived

his right to wear civilian clothing: "That is because of the rule, supported by a strong majority, that absent a waiver accused should not be forced to trial in prison garb." *Id.*, 457 S.W.3d at 849.

Almost three decades later in *Tucker v. State*, 336 Ark. 244, 247-48, 983 S.W.2d 956, 958 (1999), we were presented with a situation similar to Hinton's, where an incarcerated prisoner was at trial for separate offenses than his incarceration and requested to wear civilian clothes. Tucker was charged with capital murder in the death of a fellow inmate that occurred while incarcerated at that ADC. On appeal, Tucker asserted the circuit court erred in denying his motion to wear civilian clothing at trial. We affirmed the circuit court and explained:

> We have . . . recognized that when the defendant is an inmate at the state prison at the time of the trial, and these facts will be revealed during the course of the trial, any prejudice that may have resulted from having the defendant in restraints would be rendered harmless because the restraints add nothing to the trial that was not already apparent from the nature of the case. *See Jefferson v. State*, 328 Ark. 23, 941 S.W.2d 404 (1997); *Williams [v. State*, 304 Ark. 218, 800 S.W.2d 713 (1990)].
>
> The United States Supreme Court has noted that when the accused is being tried for an offense committed while in confinement, no prejudice can result from the defendant wearing prison garb because "no prejudice can result from seeing that which is already known." *Estelle v. Williams*, 425 U.S. 501, 507, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)(discussing a Fifth Circuit case, *Stahl v. Henderson*, 472 F.2d 556 (5th Cir. 1973), where a defendant was tried in prison clothes for murdering a fellow inmate and certiorari was denied).

Subsequent to *Tucker*, three years later in *Williams v. State*, 347 Ark. 728, 736, 67 S.W.3d 548, 552 (2002), we again affirmed a circuit court's denial of a defendant's motion to wear civilian clothing when the offenses that Williams was being tried for occurred during

his escape from the ADC. Williams was charged with capital felony murder and theft of property, which occurred during his escape from the Cummins Unit of the ADC. On appeal, Williams contended that the circuit court erred in requiring him to wear prison garb at trial. Citing to *Miller*, we affirmed the circuit court and explained:

> In this context, the accused is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man. *Miller v. State*, 249 Ark. 3, 457 S.W.2d 848 (1970) (citing 21 Am. Jur. 2d Criminal Law § 239).
>
> . . . .
>
> However, in this case Williams committed the acts during the course of an escape from the custody of the Arkansas Department of Correction. The acts included escape, capital murder, aggravated robbery, and theft. The United States Supreme Court in *Estelle* noted that courts have refused to find error in requiring the defendant to wear prison garb in such situations. It is obvious that during the course of the trial, Williams's incarceration would be revealed to the jury. It is equally obvious that during trial the jury would be told these crimes were committed after he escaped and while he was trying to avoid apprehension.
>
> . . . .
>
> As the United States Supreme Court noted in this regard, no prejudice can result from seeing that which is already known. *Estelle*. As one who was prosecuted for crimes committed in the course of his escape and flight from prison, that Williams wore prison garb was something that was known, or by necessity would become known during trial and could pose no prejudice. The trial court did not commit error in requiring Williams to wear his prison garb during the trial and the related proceedings.

*Williams*, 347 Ark. at 746–47, 67 S.W.3d at 558–59.

Two months after *Williams*, we handed down our opinion in *Box*. In *Box*, Box was charged with robbery of a liquor store. At the time of his trial, Box was incarcerated in the Arkansas Department of Correction on other convictions. Box was not on trial for offenses

9

that occurred within the ADC or while he was incarcerated. The issue was whether Box waived his right to appear before the jury dressed in civilian clothing. We held that under the specific facts of his case, Box had not waived his right, and we reversed the matter for a new trial. In so holding, we explained:

> There cannot be any doubt that appellant had a right to appear in civilian clothing. *Miller v. State*, 249 Ark. 3, 457 S.W.2d 848 (1970). In *Miller*, we adopted the rule then held by the majority of States that "absent a waiver accused should not be forced to trial in prison garb." *Miller*, 249 Ark. at 5, 457 S.W.2d 848. This was and remains consistent with Article 2, Section 8, of the Arkansas Constitution. Six years later, the United States Supreme Court noted this court's opinion in *Miller* with approval and adopted a somewhat similar rule in *Estelle v. Williams*, 425 U.S. 501(1976). The holding of the U.S. Supreme Court in Estelle was that under the Fourteenth Amendment, a defendant's constitutional rights were violated when he was compelled to wear identifiable prison clothing. The U.S. Supreme Court's decision in *Estelle* was first noted by this court in *Holloway, Welch & Campbell v. State*, 260 Ark. 250, 539 S.W.2d 435 (1976), rev'd on other grounds, *Holloway v. Arkansas*, 435 U.S. 475 (1978). We have never altered our original holding in *Miller*.

*Box*, 348 Ark. at 123, 71 S.W.3d at 556–57.

At issue here is whether Hinton received a fair trial. We answer in the affirmative. Hinton was charged with crimes that occurred while incarcerated—battery in the first degree and second degree of ADC officers during a riot that occurred while incarcerated for other offenses at the ADC. Although Hinton asserts that *Box* is on point, and absent a waiver he may not be tried in prison garb, he is mistaken. *Box* addressed the waiver of Box's rights to appear in civilian clothing for a trial on charges of offenses that he did not commit while incarcerated. We find *Tucker* and *Williams* are on point and direct us to affirm the circuit court. Like Tucker and Williams, Hinton committed acts while in the custody of the ADC. In *Williams*, citing the United States Supreme Court's opinion in *Estelle*, we noted that the

10

Supreme Court recognized that courts have refused to find error in requiring the defendant to wear prison garb in such situations. As in *Williams*, it is obvious here that during the course of the trial, Hinton's incarceration would be revealed to the jury. It is equally obvious that during trial the jury would be told these crimes were committed while he was incarcerated at the ADC because the underlying facts stem from a riot at the prison, and the victims were ADC officers. In *Williams*, we held that any prejudice would be rendered harmless. As the United States Supreme Court noted in this regard, no prejudice can result from seeing that which is already known. *See Estelle*. Because Hinton was prosecuted for crimes committed during his incarceration, that Hinton wore prison garb was something that was known, or by necessity would become known during trial, and could pose no prejudice. Accordingly, the circuit court did not commit error in requiring Hinton to wear his prison garb during the trial.

Affirmed.

HART, J., concurring in part and dissenting in part.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.** I concur with the majority's speedy-trial analysis. However, I disagree with the majority's analysis concluding that Kenneth Hinton received a fair trial. It is not clear whether the majority is holding that the circuit court did not err, that the circuit court's error was harmless, or both. In any event, the majority is wrong.

SLIP OPINION

In focusing on dicta in *Estelle v. Williams*, 425 U.S. 501 (1976),[1] the majority overlooked the essential point of the case. The United States Supreme Court specifically held in *Estelle* that "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Estelle*, 425 U.S. at 512. "[M]aking a defendant appear in prison garb poses such a threat to the 'fairness of the factfinding process' that it must be justified by an 'essential state policy.'" *Deck v. Missouri*, 544 U.S. 622, 628 (2005) (citing *Estelle*, 544 U.S. at 503, 505). In *Estelle*, the Court stated,

> The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975). The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.
>
> . . . .
>
> To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact–finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.
>
> . . . .
>
> Unlike physical restraints, permitted under [*Illinois v.*] *Allen*, [397 U.S. 337 (1970)], compelling an accused to wear jail clothing furthers no essential state policy. That it may be more convenient for jail administrators, a factor quite unlike the substantial need to impose physical restraints upon contumacious defendants, provides no justification for the practice.

---

[1] The language relied on by the majority was merely an observation by the United States Supreme Court regarding the practices of lower courts, and the Court identified a split of authority regarding whether a defendant suffered prejudice when tried in prison garb for a crime that occurred in prison. *Estelle*, 425 U.S. at 507. As discussed here, compelling a defendant to appear for jury trial in prison garb is inconsistent with the Fourteenth Amendment.

*Estelle*, 425 U.S. at 503, 505.

Thus, *Estelle* indicates that there is no essential state policy that would justify compelling a defendant to appear for trial before a jury in prison garb. Here, despite the availability of civilian clothing and counsel's request that Hinton be tried in civilian clothing, the circuit court provided no reason for requiring Hinton to appear in prison garb at trial, stating, "So we are just going to go in there and get to trying." In fact, the circuit court stated that it had "not been informed of any propensity for Mr. Hinton to act up in court." Thus, the circuit court erred by compelling Hinton to appear for jury trial in prison garb.

Further, the majority misses the mark in its assertion that, because Hinton was incarcerated at the time the crimes occurred, there was no prejudice. Given the inherent prejudice in requiring Hinton to appear for trial before a jury in prison garb, it cannot be said that compelling Hinton to appear in prison garb was harmless. *Id*. at 635 (noting that the negative effects of compelling a defendant to wear prison clothing cannot be shown from the transcript). Thus, Hinton need not demonstrate actual prejudice to make out a due-process violation. *Id*. Moreover, the error committed here, compelling Hinton to appear for a jury trial in prison garb, was an error of federal constitutional dimension. Thus, the State was required to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Id*. at 635.

In any event, and even though not required to do so, Hinton did establish prejudice. As Hinton notes, his trial took place years after the incident at the Arkansas Department of Correction. His conclusion is correct: "It is logical that the jury would equate his continued incarceration with a prior conviction of a serious crime." The criminal process assumes that the defendant is innocent until proved guilty. *Id.* at 630. This presumption that a defendant is clothed in innocence was destroyed by the circuit court's decision to compel this defendant to sit at the defense table in prison garb.

In reaching its conclusion, the majority has relied on cases from our own court that predate *Deck* and are thus of doubtful precedential value. But even in the absence of *Deck*, *Estelle* compels reversal of the circuit court's decision. Instead, the majority affirms an error of federal constitutional dimension and holds Hinton to a burden he does not have to meet.

I respectfully dissent on this point.

*Jason D. Files*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.