KAREN R. BAKER, Associate Justice
Appellant Kenneth Hinton appeals the denial of his petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. Hinton was convicted of one count of first-degree battery and one count of second-degree battery and sentenced to thirty years' imprisonment and fifteen years' imprisonment respectively. Hinton's convictions and sentences were affirmed in Hinton v. State , 2017 Ark. 107, 515 S.W.3d 121. Following this court's decision, Hinton timely filed a petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. After a hearing, the circuit court entered its order denying Hinton's petition. We affirm.
Hinton's convictions stem from a disturbance at the Varner Unit of the Arkansas Department of Correction ("ADC") on October 28, 2012, in which Hinton and other inmates were involved. Hinton was charged in the disturbance for injuring Warden Joe Page and shift lieutenant Stephen Simmons. Initially, Hinton was named as a codefendant with Karl Pearce, Demetrius Woods, Desmond Holliman, Charles Jester, and Antonio Smith. On December 15, 2014, a jury trial was held and resulted in a mistrial on December 16. On April 25, 2016, the case proceeded to trial for a second time.
During Hinton's trial, Lieutenant Simmons testified that on the day of the incident, he had been working at the Varner Unit for a little over two years and was familiar with Hinton. Lieutenant Simmons testified that at the time of the incident there was tension in the chow hall because the inmates realized that an illegal phone had been confiscated from one of the barracks. A riot broke out with several inmates assaulting the staff. Lieutenant Simmons testified that Hinton struck him in the back of his head. Lieutenant Simmons testified that he was certain Hinton was the inmate who had struck him because "that's a face I will never, ever forget." Lieutenant Simmons testified that after Hinton struck him, Hinton immediately ran and struck Warden Page. During his testimony, Lieutenant Simmons reviewed videos and still photographs of the incident and identified Hinton as the inmate who had struck him and Warden Page. With regard to Warden Page's condition after he was struck by Hinton, Lieutenant Simmons testified that Warden Page was unresponsive. Lieutenant Simmons testified that as a result of the incident, he prepared an incident report in which he stated that Hinton ran out of the main chow hall and hit him with a closed fist on the left side of his face. On cross-examination, Lieutenant Simmons testified that he did not document Hinton's striking Warden Page in the incident report.
Sergeant Kenneth Ridgell, a field rider with the ADC, testified that he was familiar with Hinton because Hinton previously worked on his utility squad. Sergeant Ridgell testified that on the day of the incident, he witnessed Hinton blindside Warden Page with a closed fist, knocking him *385 unconscious. Sergeant Ridgell testified that as a result of the incident, he prepared an incident report. In Ridgell's incident report, he did not list Hinton as one of the inmates involved in the riot. Sergeant Ridgell testified that while he did not identify Hinton as the inmate who had knocked Warden Page to the ground, this information should have been in his incident report.
Warden Page testified that because of his traumatic brain injury, he cannot recall any of the events from the day of the incident.
Hinton was convicted and sentenced as set forth above. Following this court's affirmance of his convictions and sentences, Hinton timely filed his petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. In his petition, Hinton argued that his trial counsel was ineffective in failing to investigate and call witnesses who would have testified that Hinton did not hit Warden Page or Lieutenant Simmons.[1] On June 12, 2018, a hearing was held on Hinton's Rule 37 petition. During the hearing, Hinton testified that he informed his trial attorney, Jason Files, that he did not participate in the assault on Warden Page and the other officers. Hinton testified that he discussed with Mr. Files the following witnesses that could be called to testify on his behalf: Antonio Smith, Desmond Holliman, Carlos McFerrin, Demetrius Woods, and Eric Ticey.[2] Hinton testified that he wrote Mr. Files "a letter, an affidavit, letting him know that the way the first trial went, we was on the wrong page because he didn't call none of the witnesses that I asked him to call. So I basically wrote it out in affidavit form to call witness on my behalf and to do a better investigation job." With regard to the affidavit he sent to Mr. Files, Hinton testified that he informed Mr. Files that the witnesses would be able to testify that he was in Barracks 9 when the incident took place, which is two barracks away from the chow hall. Hinton testified the Mr. Files could have easily interviewed the potential witnesses because they were inmates in the ADC.
The five inmate-alibi witnesses, Smith, Holliman, McFerrin, Woods, and Ticey testified that they were either charged criminally or received disciplinary actions in relation to the battery of Warden Page and Lieutenant Simmons. The witnesses testified that Hinton was not present when the incident occurred. Additionally, each witness testified that he had not been contacted by Hinton's trial counsel about what he saw or whether Hinton was present during the incident. However, each witness testified that if he had been contacted, he would have been willing to testify on Hinton's behalf at his trial.
Jason Files testified that based on his case file, Hinton requested that he call only three witnesses-Charles Jester, Desmond Holliman, and Karl Pearce.[3] Mr. Files testified that he contacted the attorneys of all three witnesses before trial. Mr. Files was told by all three attorneys that *386 their clients would be willing to testify on behalf of Hinton but that their clients would be committing perjury if they testified that Hinton was not present during the riot. Additionally, Mr. Files testified that he elected not to the call the inmate witnesses because their serious criminal histories would become an issue. Despite Hinton's decision to not testify at his trial, Mr. Files was concerned it would become apparent to the jury that "this was a max unit and anybody in there was there for a serious crime." Mr. Files testified that his defense strategy was to present the riot as a very quick and traumatic incident, which would then allow him to challenge the accuracy of the prison guards' recollection of the events. Mr. Files further explained that "if we then call in inmates to say here's what really happened, we create a dichotomy of these guys know exactly what happened and they are right and they saw everything correctly versus ... if they could see it all correctly ... that means the guards probably saw it all correctly too." Mr. Files testified that the use of the inmates' testimony would have forced the jury to make a credibility determination between convicted inmates and law enforcement officers, which Mr. Files thought would result in an unfavorable outcome for Hinton. Mr. Files testified that by the second trial, the former codefendant witnesses had already pleaded guilty. In Mr. Files's opinion, their guilty pleas would have affirmed the prison guard's testimony.
On August 9, 2018, the circuit court entered its written order denying Hinton's petition. The circuit court found in pertinent part:
All of petitioner's witnesses admitted that since October 2012, until the hearing, they had not told officials that Hinton was not present during the riot. The testimony lacked the factual substantiation necessary to overcome the presumption that trial counsel's investigation fell below the wide range of reasonable professional assistance. The decision to call a witness is a matter of trial strategy. Mr. Files testified that in his professional opinion, presenting to a jury an inmate's testimony that completely contradicts the testimony of the ADC officers, would not benefit his client. Mr. Hinton was identified as one of the inmates who struck Warden Page and Officer Simmons. The jury viewed the video security recording of the incident. The jury was directed to observe Hinton in the recording as he participated in the riot. Mr. Files' trial strategy may have been instrumental in the jury's decision to recommend the minimum 30-year sentence for the petitioner's conviction on battery in the first degree. The punishment options ranged from a minimum of 30 years but not more than 60 years.
....
Petitioner has not met the first prong of the Strickland standard requiring a showing that Mr. Files made errors to serious that he was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. Without proof to support the first prong, the second prong need not be addressed.
Hinton now brings this appeal and presents one issue for review: the circuit court erred in denying his Rule 37 petition because Hinton received unconstitutional ineffective assistance of counsel when his counsel failed to investigate and call the inmate-alibi witnesses at his trial.
"On appeal from a trial court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous.
*387 Kemp v. State , 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. Id. " Prater v. State , 2012 Ark. 164, at 8, 402 S.W.3d 68, 74.
"The benchmark for judging a claim of ineffective assistance of counsel must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' Strickland [v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]." Henington v. State , 2012 Ark. 181, at 3-4, 403 S.W.3d 55, 58. Pursuant to Strickland , we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. Williams v. State , 369 Ark. 104, 251 S.W.3d 290 (2007). A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. Springs v. State , 2012 Ark. 87, 387 S.W.3d 143. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.
Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. Id. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. Howard v. State , 367 Ark. 18, 238 S.W.3d 24 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Id. Additionally, conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. Anderson v. State , 2011 Ark. 488, 385 S.W.3d 783.
With respect to an ineffective-assistance-of-counsel claim regarding the decision of trial counsel to call a witness, such matters are generally trial strategy and outside the purview of Rule 37.1. Banks v. State , 2013 Ark. 147, 2013 WL 1491272. When a petitioner alleges ineffective assistance of counsel for failure to call witnesses, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. Wertz v. State , 2014 Ark. 240, at 4, 434 S.W.3d 895, 900 (citing Moten v. State , 2013 Ark. 503, 2013 WL 6327549 (per curiam)). To demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. Hickey v. State , 2013 Ark. 237, 428 S.W.3d 446. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. Id. Nonetheless, such strategic decisions must still be supported by reasonable professional judgment. Id. Finally, "[w]hen assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses *388 that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness." Johnson v. State , 325 Ark. 44, 49, 924 S.W.2d 233, 236 (1996) (internal citations omitted). To review the circuit court's order and correctly determine this issue, we must look at all the evidence adduced at trial and at the Rule 37 hearing. Howard , 367 Ark. 18, 238 S.W.3d 24.
We now turn to the sole issue raised by Hinton. Hinton's allegation of ineffective assistance of counsel is that his trial counsel failed to investigate and call the inmate-alibi witnesses at his trial. Hinton argues that even if Mr. Files had been told that Holliman's, Jester's, and Pearce's testimony may have amounted to perjury, this did not mean that Mr. Files could abdicate his responsibility to investigate Smith, McFerrin, Woods, and Ticey. Thus, Hinton contends that the first prong of Strickland has been met through Mr. Files's failure to investigate the inmate-alibi witnesses who were residing in Barracks 9 when the incident occurred.
A review of the record demonstrates that Hinton has failed to meet his burden under the first Strickland prong because he has not demonstrated that his trial counsel's performance fell below an objective standard of reasonableness. Additionally, the record shows that trial counsel's decision to not interview or call the witnesses was based on reasonable professional judgment. Mr. Files's defense strategy--to present the riot as a very quick and traumatic incident that would then allow him to challenge the accuracy of the prison guards' recollection of the events--was clearly supported by reasonable professional judgment. Further, Mr. Files's decision to not call the inmate witnesses because their serious criminal histories would, despite Hinton's decision not to testify, make it appear to the jury that he likewise held a serious criminal history. Finally, Mr. Files testified that he did not want to force the jury to make a credibility determination between convicted inmates and law enforcement officers because he thought this would result in an unfavorable outcome for Hinton. Because the decision not to call the inmate witnesses falls within the realm of trial strategy, it is outside the purview of Rule 37.
In sum, because we conclude that the performance of Hinton's trial counsel was not deficient, we need not address the prejudice requirement, which is the second prong under Strickland . Williams v. State , 2011 Ark. 489, 385 S.W.3d 228. Accordingly, the circuit court's decision to deny Hinton's petition for Rule 37 relief was not clearly erroneous, and we affirm.
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
I dissent. It is not disputed that Mr. Hinton's trial counsel, Jason Files, interviewed none of the five alibi witnesses that Mr. Hinton directed him contact. None. Files's excuse for his making no effort to contact these five witnesses is that he spoke to the lawyers for three of them. Assuming for a moment that talking to a witness's trial counsel counted as "investigation," that still left two potential witnesses that Files did not even attempt to do anything with. Nonetheless, the majority concludes that doing nothing, not even attempting to contact these potential witnesses constituted "reasonable professional judgment."
So let us consider the effort that Files actually did-allegedly-expend in "investigating" Mr. Hinton's potential alibi witnesses. According to Files, he talked to the witnesses' trial counsel, Robbie Golden *389 and Dale West, and they-allegedly-told him that they would provide Mr. Hinton with an alibi, but that they would be committing perjury. Assuming that these conversations even took place, were not these highly experienced criminal-defense lawyers divulging confidential attorney/client communication? So, in effect, the majority is sanctioning gross ethical violations as a reasonable substitute for actually contacting the potential witnesses. In my view, it is certainly not "professional," far from "reasonable," and, if true, appallingly bad judgment by all concerned.
Finally, I must reject the majority's conclusion that Files's approach to the trial constituted "reasonable professional judgment." The majority has obviously failed to consider that it was Mr. Hinton's trial, not his lawyer's. Rule 1.2 of the Arkansas Rules of Professional Conduct, which sets the minimum standard for attorneys, states in pertinent part, "[A] lawyer shall abide by a client's decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Yet, instead of presenting the alibi defense that Mr. Hinton wanted, Files called no witnesses and simply relied on perfunctory cross-examination of the State's witnesses to undermine their accusations. The folly of Files's approach is obvious; the majority fails to recount that the jury was shown a video of the so-called riot, so it could draw its own conclusions about how "quick and traumatic" the "incident" was. Accordingly, Files's excuse for his performance rings hollow.
I likewise cannot endorse the majority's conclusion that Files's decision not to call alibi witnesses was "reasonable" because it would have opened the door to the State exposing the fact that these witnesses were incarcerated for serious felonies. The majority has lost sight of the fact that the "incident" in question was a prison riot, not a cotillion. No sane juror would expect a prison inmate not to have a criminal record. I am mindful that the Strickland Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential," however it also specified that trial strategy must be "reasonable." Strickland v. Washington , 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In my view, when a trial attorney does virtually nothing to defend his client, that performance can never be "reasonable."
I dissent.

Hinton set forth additional grounds in his petition for postconviction relief. However, Hinton fails to address these arguments on appeal, and issues raised below but not argued on appeal are considered abandoned. Stewart v. State , 2014 Ark. 419, 443 S.W.3d 538 (per curiam).

Hinton had originally wanted Mr. Files to call Charles Jester, a previous codefendant. However, Hinton testified that he "scratched him" because "they shipped him out of state."

Mr. Files indicated that there was a fourth individual that Hinton wanted him to call as a witness. However, Mr. Files could not recall the individual's name because he had already been released from prison and could not be located.