Cite as 2019 Ark. 254

# SUPREME COURT OF ARKANSAS
### No. CR-18-707

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 3, 2019 |
| RODNEY WAYNE RAYBURN | | |
| | APPELLANT | APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. 12CR-17-63] |
| V. | | |
| | | HONORABLE TIM WEAVER, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Rodney Wayne Rayburn appeals an order of the Cleburne County Circuit Court convicting him of rape of a minor and sentencing him as a habitual offender to life imprisonment without parole. For reversal, Rayburn argues that the circuit court erred in denying his motion to dismiss for violating his right to a speedy trial and his motion to dismiss for prosecutorial delay. Rayburn also contends that the circuit court abused its discretion in admitting an Arkansas Department of Correction "pen pack" and an Arkansas Court of Appeals opinion as evidence of prior convictions. We affirm.

## I. *Facts*

On July 9, 2015, Rayburn raped his eleven-year-old daughter, H.R., at a Cleburne County campsite. There, Rayburn took H.R. and her brother to the campground showers, sent her brother to a different shower stall, went into the same shower with H.R., locked

the door, began washing her naked body, forced her to perform oral sex while on her knees, and attempted anal penetration.

On July 13, 2015, the Arkansas State Police Crimes Against Children Division (CACD) received a call from the child-abuse hotline alleging that Rayburn had sexually abused H.R. on numerous occasions. The next day, on July 14, CACD Investigator Pamela Meeks conducted a forensic interview of H.R. During the interview, H.R. described in detail what Rayburn had done to her in the shower at the Cleburne County campsite. She also described other sex crimes committed by Rayburn against her at a rice mill in Arkansas County and at her home in Jefferson County where she and her family lived. Investigator Meeks sent notice to prosecutors in Arkansas and Jefferson Counties. The Arkansas State Police did not report the investigation to Cleburne County officials at that time. Arkansas County officers arrested Rayburn in August 2015.[1]

The Cleburne County Sheriff's Office learned about the July 2015 rape in June 2016. Jennifer Osborne, an investigator with the Cleburne County Sheriff's Department, testified that she received a call from H.R.'s grandmother inquiring why she had not been notified by the sheriff's department about the Rayburn case. Osborne stated that at that time, she had received nothing from the hotline saying that she had allegations in her county. After that phone call, Osborne spoke with a CACD investigator and subsequently

---

[1]Rayburn was tried by an Arkansas County Circuit Court jury and convicted of rape and attempted rape of a minor in December 2016. The Arkansas Court of Appeals affirmed the jury's conviction and sentence in *Rayburn v. State*, 2018 Ark. App. 84, 542 S.W.3d 882.

met with H.R., her mother, and her grandmother. Osborne stated that she went to the crime scene with the victim and photographed it. She stated that after her initial investigation in the fall of 2016, she went on vacation for a month and a half and presented the file to the [Cleburne County] prosecutor "[w]hen I came back."

On April 18, 2017, the State filed a felony information in the Cleburne County Circuit Court and charged Rayburn with the rape of a child less than fourteen years of age, a violation of Arkansas Code Annotated section 5-14-103(a)(3)(A) (Supp. 2017). The Cleburne County Circuit Court issued an arrest warrant that same day. The arrest warrant was served on Rayburn on January 12, 2018. On February 9, 2018, after a two-day jury trial, the Cleburne County Circuit Court entered an order convicting Rayburn of rape and sentencing him to life imprisonment as a habitual offender. He timely filed his notice of appeal.

II. *Arguments on Appeal*

A. Speedy Trial

For the first point on appeal, Rayburn argues that the circuit court erred in denying his motion to dismiss for violation of the right to a speedy trial. Specifically, he contends that the State violated his right to a speedy trial by holding his trial in Cleburne County in February 2018—more than two years after his August 2015 arrest in Arkansas County. On appeal, we conduct a de novo review to determine whether specific periods of time are excludable under our speedy-trial rules. *E.g.*, *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007).

Pursuant to Rule 28.1(b) of the Arkansas Rules of Criminal Procedure (2018), any defendant charged with an offense and incarcerated in this state pursuant to conviction of another offense must be brought to trial within twelve months "from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3." Rule 28.2(a) provides that "[t]he time for trial *shall commence running from the date of arrest or service of summons*." (Emphasis added.) If a defendant is not brought to trial within the requisite time, he or she is entitled to have the charges dismissed, and "[t]his discharge shall constitute an absolute bar to prosecution." Ark. R. Crim. P. 30.1(a). Once it has been shown that a trial was held after the speedy-trial period set out in Rule 28.1 has expired, the State bears the burden of proving that the delay was the result of the defendant's conduct or was otherwise justified. *Miles v. State*, 348 Ark. 544, 75 S.W.3d 677 (2002).

In the present case, the following facts are relevant to our analysis. On February 5, 2018, before trial, Rayburn filed a motion to dismiss alleging that the State did not bring him to trial within twelve months of his arrest because he was arrested in August 2015 in Arkansas County. He argued that the twelve-month time period began in August 2015 and that his speedy-trial time expired in August 2016. He asked the circuit court to dismiss the charges. The next day, the circuit court held a hearing and denied Rayburn's speedy-trial motion.[2]

---

[2]At the pretrial hearing, the circuit court erroneously denied Rayburn's motion on the basis that the speedy-trial time had not run from the date of the filing of the felony information in April 2017 instead of the date of the arrest in January 2018. Nevertheless, this court will affirm the ruling of a circuit court if it reached the right result, even though

Here, Rayburn's trial in Cleburne County occurred well within twelve months from the time of his arrest for the charge in Cleburne County, as required by Rule 28.1 of the Arkansas Rules of Criminal Procedure. On January 11, 2018, Rayburn was served with an arrest warrant for the rape that occurred in Cleburne County. Rayburn was brought to trial in Cleburne County on February 8–9, 2018. Because Rayburn was tried within twelve months of his arrest, we conclude that his speedy-trial rights were not violated. Thus, we hold that the circuit court did not err in denying Rayburn's speedy-trial motion.

## B. Undue Delay

For the second point on appeal, Rayburn urges this court to reverse the circuit court's denial of his motion to dismiss for lack of a speedy trial because of an "undue advantage due to prosecutorial delay in filing the Cleburne County charges." Specifically, Rayburn contends that this alleged prosecutorial delay violated his right to due process under the federal and state constitutions. *See* U.S. Const. amend. XIV, § 1; Ark. Const. art. 2, § 8.

In support of his argument, Rayburn cites *Scott v. State*, 263 Ark. 669, 556 S.W.2d 737 (1978), for the proposition that prosecutors cannot delay filing charges to gain a tactical advantage against a defendant. In *Scott*, the State gained a tactical advantage because it had delayed the filing of a murder charge for three years, and in the interim, two key witnesses had died. However, the *Scott* case is distinguishable from the case at bar.

---

it may have been announced for the wrong reason. *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001).

Here, Rayburn has not alleged that any witness is unavailable or that any evidence has been lost or compromised.

Further, the record does not indicate any undue delay. In his pretrial motion, Rayburn contended that the Cleburne County prosecutor's delay in filing charges in April 2017—after an Arkansas County Circuit Court jury convicted him of two felonies in December 2016—violated his due-process rights under the federal and state constitutions because "it unfairly prejudices him[,] and the State's delay in filing the charges was done in order to gain a tactical advantage over the defendant." He claimed that because the Cleburne County prosecutor delayed filing charges, he was denied the opportunity to receive concurrent sentences.

At the pretrial hearing, Investigator Osborne testified that she became aware of the allegations in Cleburne County in June 2016 when H.R.'s grandmother called her to discuss Rayburn's case. According to Osborne, she requested the CACD file in September 2016 and began her investigation by speaking with the other investigators; meeting with the victim, her brother, her mother, and her grandmother; visiting the crime scene with the victim; photographing the crime scene; and consulting with a physician. She also testified that she spoke with the Cleburne County prosecutor in November 2016, went on vacation, and gave the file to the prosecutor when she returned. According to Osborne, the prosecutor filed charges in the spring of 2017. After hearing Osborne's testimony and arguments from counsel, the circuit court denied Rayburn's motion, stating,

Based on . . . everything submitted before this court on this motion, I will find . . . I'm going to deny this motion to dismiss. I find that defendant cannot – or has not demonstrated that he . . . was prejudiced by the delay of filing the charges. I agree with the State. It's only speculation as to what would or could have occurred had they all been filed simultaneously in these three counties [Arkansas, Jefferson, and Cleburne]. I'm going to find that this is a . . . statutory sentencing issue that Mr. Rayburn doesn't like. And I don't blame him. I mean, it is harsh. And it's harsh for a reason. Because I would say that there's probably short of a capital offense, there's no greater crime than rape. So, I understand what he's saying about the sentence. But I'm going to find that the sentencing is not a tactical advantage. And that the State has [not] gained some sort of advantage by waiting to file until after the first conviction.

We agree with the circuit court's reasoning. First, the record does not reflect any unnecessary delay by the prosecutor in Cleburne County. Here, Osborne received a call in June 2016 and began her investigation. The prosecutor filed the felony information in Cleburne County in April 2017, and Rayburn was brought to trial in February 2018. We do not perceive any intentional delay, particularly when Rayburn also faced pending charges in Arkansas County while incarcerated in the Arkansas Department of Correction. Second, we agree with the circuit court that Rayburn did not suffer any prejudice because Rayburn could only speculate about whether he would have received concurrent sentences if the State had filed rape charges simultaneously in all three counties. Thus, we hold that the circuit court did not err in denying Rayburn's undue-delay motion and affirm on this point.

C. Admissibility of Evidence

For the third point on appeal, Rayburn argues that the circuit court abused its discretion by admitting evidence of prior convictions during the sentencing phase to

7

impose a term of life imprisonment, pursuant to Arkansas Code Annotated section 5-4-501(d)(1)(A) (Supp. 2017). That documentary evidence included an Arkansas Department of Correction pen pack reflecting his Arkansas County convictions and an uncertified copy of the Arkansas Court of Appeals opinion, *Rayburn*, 2018 Ark. App. 84, 542 S.W.3d 882, affirming his Arkansas County convictions.

Evidence of an appellant's prior convictions is admissible during the sentencing phase of trial as proof of the allegation that the appellant was a habitual offender. *See* Ark. Code Ann. § 16-97-103(2) (Repl. 2016). The State bears the burden of proving a defendant's prior convictions under the habitual-offender statute. *See Williams v. State*, 304 Ark. 279, 801 S.W.2d 296 (1990). A prior felony may be proved by any evidence that satisfies the circuit court beyond a reasonable doubt that the defendant was convicted or found guilty of the prior felony. Ark. Code Ann. § 5-4-504(a) (Repl. 2013). Arkansas Code Annotated section 5-4-504(b) lists examples of certain documents that are sufficient to support a finding of a prior conviction or a finding of guilt. Ark. Code Ann. § 5-4-504(b)(1). We apply an abuse-of-discretion standard to a circuit court's decision to admit evidence in the penalty phase of a trial. *Crawford v. State*, 362 Ark. 301, 208 S.W.3d 146 (2005).

Here, during the sentencing phase, the circuit court admitted the ADC pen pack and the court of appeals opinion as evidence of Rayburn's prior Arkansas County convictions of rape and attempted rape. While the pen pack incorrectly reflects that Rayburn pleaded guilty to these two prior felonies in Arkansas County, it does include

8

Rayburn's prior Arkansas County convictions, offense dates, sentencing dates, felony classifications, and sentences for each conviction. Additionally, the uncertified Arkansas Court of Appeals opinion reflects the appellate court's holding to affirm the Arkansas County jury's conviction and sentence. Neither of these documents strictly complied with the requirements of section 5-4-504(b), but they did satisfy the circuit court beyond a reasonable doubt under section 5-4-504(a) that Rayburn had been found guilty of the prior felonies of rape and attempted rape. *See, e.g.*, *Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994) (stating that the State is not limited to the methods of proof listed in section 5-4-504(b)). Thus, we conclude that the circuit court did not abuse its discretion in admitting these exhibits for sentencing-enhancement purposes.[3] Accordingly, we affirm the circuit court's evidentiary rulings.

D. Rule 4-3(i)

Because Rayburn received a life sentence without the possibility of parole, this court, in compliance with Arkansas Supreme Court Rule 4-3(i), has examined the record for all objections, motions, and requests made by either party that were decided adversely to Rayburn. No prejudicial error has been found. We therefore affirm.

---

[3]Rayburn also contends that the two documents reflecting his prior convictions were inadmissible under our rules of evidence. Although this court has held that our rules of admissibility and exclusion must govern the introduction of evidence in the sentencing phase of trials, *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994), we have also stated that, pursuant to Ark. Code Ann. § 16-97-103, certain evidence is admissible at sentencing that would not have been admissible at the guilt phase of the trial, *Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002). Here, the circuit court is granted statutory leeway to admit evidence in this context. Thus, we conclude that the circuit court did not abuse its discretion in admitting this evidence of Rayburn's prior convictions for sentencing purposes.

9

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. Rayburn's arguments about speedy trial and undue delay have merit, and this court should deter the actions by the State in this case.

The State must try a defendant within twelve months of his "arrest or service of summons," excluding delays for certain matters. Ark. R. Crim. P. 28.1(b), 28.2(a), 28.3. Once a defendant shows that the speedy-trial period has passed, the State must show that the delay was because of the defendant's conduct or otherwise justified. *Hinton v. State*, 2017 Ark. 107, at 4, 515 S.W.3d 121, 123. If the State does not meet that burden, then the defendant must absolutely be discharged. Ark. R. Crim. P. 30.1(a).

Here, it is helpful to consider the following factual timeline:

- *July 9, 2015* – The incident at the Cleburne County campsite takes place.

- *July 13, 2015* – The Arkansas State Police Crimes Against Children Division (CACD) receives a call from the child-abuse hotline alleging that Rayburn has sexually abused H.R. on numerous occasions in Cleburne, Arkansas, and Jefferson Counties.

- *July 14, 2015* – CACD interviews H.R., and the investigation otherwise continues.

- *August 2015* – Rayburn is arrested in Arkansas County.

- *June 2016* – H.R.'s grandmother calls an employee at the Cleburne County Sheriff's office about the status of Rayburn's prosecution in Cleburne County.

- *July 2016* – Here is the State's first known communication with Cleburne County officials about the allegations at issue.

- *December 2016* – Rayburn is convicted in Arkansas County of rape and attempted rape of a minor.

- *April 18, 2017* – The State files information against Rayburn in Cleburne County.

- *January 11, 2018* – Rayburn is served with an arrest warrant for the Cleburne County allegations.

- *February 7, 2018* – The Arkansas Court of Appeals affirms Rayburn's Arkansas County convictions.

- *February 8–9, 2018* – Cleburne County trial.

The State contends that the speedy-trial clock for Rayburn's Cleburne County charges began to run when he was served with the arrest warrant on January 11, 2018, less than a month before he would stand trial on those charges. But embracing this proposition ignores the history of this matter. Plainly, the State was aware of the Cleburne County facts when Rayburn was arrested in August 2015. The events at the Cleburne County campsite, which would have occurred on July 9, 2015, are what prompted the CACD investigation, which began less than a week after the child-abuse hotline call. Moreover, the testimony at the pre-trial hearing below reflects that, other than the prior CACD investigation, there were no "new" or separate investigative measures ever conducted relating to the later-filed Cleburne County case. *The State even used the Cleburne County allegations as evidence of prior acts against Rayburn in the Arkansas County trial.* Any assertion that Rayburn's August 2015 arrest somehow should not relate to both the Cleburne and Arkansas County allegations is simply baseless.

And yet, the State (initially, of course) filed charges against Rayburn for the allegations relating only to Arkansas County. According to representations made by the State to the circuit court below, the State did not even *inform* Cleburne County officials about the allegations or the underlying investigation until July 2016, and those charges were not filed until April 18, 2017. Rayburn was not tried for the Cleburne County facts until February 8–9, 2018, some two and a half years after he was arrested pursuant to these same allegations in August 2015. One struggles to think of a legitimate reason why the State would take this winding and delayed approach. Rayford argues that this was a deliberate omission and that the delayed prosecution gave the State an undue advantage in violation of his due-process rights.

Rayburn asserts that this prejudiced him in several ways, including adverse sentencing implications. With the prosecution for the Cleburne County allegations separated and delayed until after Rayburn was convicted of rape and attempted rape for the Arkansas County allegations, Rayburn's only possible sentence for the Cleburne County allegations was life without the possibility of parole. Ark. Code Ann. § 5-4-501(d). Without those prior convictions, Rayburn could have received a sentence for a term of years on the Cleburne County charges.

The State's tactics here should be deterred. The allegations against Rayburn are obviously condemnable, but gamesmanship has no place in our criminal justice system. No one reasonably believes that the delay in the State's prosecution of the Cleburne County case was incidental. The State delayed for a reason, and that reason was to make

12

Rayburn's penalty in terms of prison time greater. That should not be part of the State's consideration when electing whether to file criminal charges against someone––in any case.

Moreover, I fear the majority allows for disparate and unequal punishment. Consider the following hypothetical comparison. Two defendants, separately, each commit three violent crimes against the same victim over the course of a single week. In each case, all three crimes are covered by a single investigation leading to the arrest of the defendant, who has no prior convictions. The first defendant committed all three crimes in a single county, and the second defendant committed two crimes in one county and one crime in another. Assume that each defendant's crimes, in every conceivable respect, are equally condemnable and that justice would see each defendant receive equal punishment. By the majority's rationale, the first defendant's sentence will be subject to a term of years in prison, while the second defendant's sentencing options will be limited to life in prison without the possibility of parole. Our system of justice should avoid such inconsistencies.

I dissent.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.