SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CR–14–136

| | |
|---|---|
| NAEEM RASUL<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** March 19, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60CR–07–4870]<br><br>HONORABLE HERBERT THOMAS WRIGHT, JUDGE<br><br>AFFIRMED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Naeem Rasul brings this appeal from an order entered by the Pulaski County Circuit Court denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure. For reversal, appellant contends that the circuit court erred in concluding that he did not receive ineffective assistance of counsel at trial. We affirm the circuit court's decision.

The prosecuting attorney in Pulaski County charged appellant with the offense of first-degree murder in the shooting death of Henry Onukwube that occurred on October 20, 2007, in Pettaway Park, which is adjacent to Twenty-First Street in Little Rock. The record of trial reflects that appellant and Onukwube were involved in an altercation in the early morning hours on the day the homicide took place. In this incident, appellant struck Onukwube on the head with a pistol, leaving a wound that required stitches. According to appellant's testimony at trial, later that morning Onukwube damaged the door of a home

owned by appellant's mother on Vance Street, and Onukwube also hurled a brick through the window of appellant's vehicle that was parked there.

That same afternoon, appellant was driving in a truck with his brother down Twenty-First Street on his way back to his mother's home after purchasing soft drinks at a store. Appellant testified that, as he was passing by the park, he saw Onukwube near a picnic table, and he said that Onukwube retrieved a handgun from his pocket and waved the gun around in a taunting manner. Appellant stated that, fearing for his life and that of his brother and also believing that he could not escape with safety, he stopped the truck, exited, and began shooting his .45-caliber semiautomatic pistol at Onukwube. Although appellant testified that he did not know that his brother had also exited the truck, a witness, Arlin Cheeter, testified that both men emerged in tandem from the truck after it came to an abrupt stop and that both of them immediately began firing their handguns at Onukwube, who ran in the opposite direction. Cheeter also testified that, when the truck passed by the park, Onukwube had "dropped back" and reached under his shirt, as if Onukwube had a weapon. Cheeter said, however, that he did not see Onukwube with a gun, and he denied that he confiscated any weapon from Onukwube after the shooting.

Carlos Chambers was also in the park with Onukwube. He testified that he ran and then hit the ground so as not to be struck by the gunfire. Chambers said that he looked back and saw the men from the truck chasing Onukwube until Onukwube fell onto the basketball court. He testified that he did not see Onukwube with a gun and that he did not see Onukwube do anything with his hand when the truck came to a stop. Chambers said that

the men walked away after Onukwube fell.

The police found Onukwube's body lying on a basketball court. They did not locate a handgun in the vicinity of the corpse or elsewhere in the park. In a small confined area, investigators recovered six .45-caliber bullet casings and ten nine-millimeter bullet casings in a linear pattern from the street heading north toward the basketball court.[1] Officers also located several bullet strikes in the ground and a projectile on the basketball court. According to the testimony, the direction of fire appeared to be from the south to the north. Despite searching with a metal detector, the officers were not able to find any physical evidence indicating that there were any shots fired, other than those from the south to the north toward the basketball court. There was also no evidence that a weapon other than a nine-millimeter or .45-caliber was used that day. Officers recovered a .45-caliber Glock semiautomatic pistol and a nine-millimeter Ruger semi-automatic pistol from the home of appellant's father. Ballistic testing revealed that the shell casings discovered at the scene were fired from those two guns.

Cameron Menzes testified for the defense and said that his brother, Cheeter, told him that Onukwube had a gun at the park. He said that he did not provide the police with this information because he did not know if it was true.

At the conclusion of the testimony, the circuit court granted appellant's request to instruct the jury on self-defense. The court also allowed instructions on the lesser-included

---

[1]In that area, they also discovered a wallet that contained appellant's driver's license and approximately $600 in cash.

offenses of second-degree murder and manslaughter. However, for reasons not explained in the record, the court instructed the jury on the claim of self-defense only with regard to the charge of first-degree murder, but not the lesser-included offenses. The jury acquitted appellant of first-degree murder but found him guilty of second-degree murder. As a consequence, appellant received a sentence of twenty years' imprisonment and a fine of $15,000, plus a firearm enhancement of fifteen years. The court of appeals affirmed his conviction and sentences. *Rasul v. State*, 2009 Ark. App. 631.

Appellant subsequently filed a timely, verified petition for postconviction relief, as well as an amended petition. Appellant claimed that his trial counsel was ineffective because he did not raise an objection to ensure that a self-defense instruction was given with respect to the lesser-included offenses. He also asserted that counsel's performance was deficient because counsel did not secure the testimony of an expert witness concerning the effects of the drug PCP, which was detected in Onukwube's system as a result of the autopsy.[2] In response, the State asserted that trial counsel's decision not to call an expert witness was a matter of trial strategy and that, in any event, the defense elicited testimony on the subject from the medical examiner, Dr. Frank Peretti. The State also asserted that appellant was not prejudiced by the absence of jury instructions on self-defense with respect to the lesser-included offenses because, given the evidence produced at trial, the outcome of the trial would not have been

---

[2]Appellant raised other issues in his petition that he does not advance on appeal. Issues raised below but not argued on appeal are considered abandoned. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143.

different.

The circuit court conducted a hearing on appellant's petitions. At the hearing, appellant presented the testimony of Dr. Kim Light, who holds a masters in pharmacology. He said that PCP is a dissociative agent that is mild and nondescript in many cases but that it can without explanation from a scientific basis produce extraordinary types of effects, including delusional thinking, paranoia, and irrational behavior. Light also stated that a person under the influence of PCP may appear to exhibit superhuman strength. On cross-examination, Light testified that he agreed with Dr. Peretti's trial testimony that Onukwube had a significant amount of PCP in his system. He also had no quarrel with Dr. Peretti's assessment that PCP can cause a person to act violently and with such delusions that a person would jump through a plate-glass window or hop over an overpass.

At the conclusion of Light's testimony, appellant rested his case. Thereafter, the State called trial counsel, Lott Rolfe, as its witness. Rolfe admitted that he should have made sure that all of the lesser-included offenses were covered by an instruction on justification. He explained that he was distracted by his preparations for closing argument. Rolfe also stated that he had considered hiring an expert regarding the effects of PCP, but he said that, after interviewing the medical examiner, he did not feel that it was necessary because he knew that he could elicit favorable testimony from Dr. Peretti on the subject.

After the hearing, the circuit court denied the petition. The circuit court found that appellant was not prejudiced by the failure of counsel to ensure that all offenses were covered by a justification instruction in light of the evidence offered at trial. Specifically, the circuit

court found:

> The evidence introduced at trial was essentially that the victim and the defendant had been involved in a violent confrontation at the defendant's place of employment in the early morning hours on the day of the murder. During this incident, the defendant fired a shot and pistol-whipped the victim, which necessitated the victim's being treated and receiving stitches for his injury. The defendant testified that while making a police report about the matter, the victim called the defendant and threatened to shoot him on sight. Later on that same morning, a police report was made regarding property damage to a house and car owned by the defendant's family, allegedly done by the victim. After going to the house to inspect and repair the damage, the defendant and his co-defendant brother went to get cold drinks from a store. On their return from the store, they saw the victim in a park and abruptly stopped their vehicle. The defendant and his brother got out of the vehicle and approached the victim in the park, both brothers firing semi-automatic handguns as they went. A total of sixteen spent cartridge casings fired from their guns were recovered in the park, with six of the casings having been fired from the defendant's weapon, a forty-five caliber Glock. While the defendant testified that the victim had a revolver in his hand, no other witness testified that the victim possessed a gun. No gun was recovered from the scene.

> The evidence introduced at trial does not reflect that the defendant was acting in self-defense when he and his brother shot at the victim. The only evidence presented that he was, came from his own self-serving testimony, which was not corroborated by any of the other possible witnesses, with the possible exception of Arlin Cheeter, who testified that the victim reached under his shirt as if he had a weapon. Even this testimony is in conflict with the defendant's testimony that the victim pulled a gun out of his pocket, not from under his shirt. The Court finds that had the jury been instructed on the availability of self-defense regarding the lesser-included offenses in this case, there is not a reasonable probability that the outcome of the trial would have been different. The defendant has not demonstrated that he was so prejudiced by his attorney's error in this regard as to warrant relief pursuant to Criminal Procedure Rule 37.

As to counsel's failure to call an expert witness, the circuit court found that counsel's performance was not deficient because he elicited the same or similar testimony during his cross-examination of the state medical examiner. This appeal followed.

Appellant first argues that the circuit court committed error by making a finding that no prejudice resulted from counsel's failure to object when the jury was not instructed on self-defense with regard to the lesser-included offenses. Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. To prevail on a claim of ineffective assistance of counsel, appellant must prove that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Banks v. State*, 2013 Ark. 147 (citing *Strickland*, *supra*). As to the prejudice requirement, a petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Sparkman v. State*, 373 Ark. 45, 281 S.W.3d 277 (2008). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Additionally, we note that, to show prejudice under *Strickland* based on trial counsel's failure to request a specific instruction, the United States Supreme Court has held that an appellant must establish that it was "reasonably likely that the instruction would have made any difference [in the outcome of the trial] in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). In assessing prejudice, courts "must consider the totality of the evidence before the judge or jury." *Strickland*, 446 U.S. at 695.

This court does not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Golden v. State*, 2013 Ark. 144, 427 S.W.3d 11. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after

reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Decay v. State*, 2014 Ark. 387, 441 S.W.3d 899.

In his argument on appeal, appellant does not contend that the circuit court's findings of fact concerning the absence of prejudice are clearly erroneous. Instead, appellant points out that the evidence at trial warranted an instruction on self-defense, and he asserts that no one can know why the jury acquitted him of first-degree murder. As his claim of error, appellant contends as a matter of law that the circuit court, in finding that counsel's error was unaccompanied by prejudice, impermissibly placed itself in the position of the fact-finder in determining a factual issue that should have been resolved by the jury at trial. For this proposition, appellant cites *Turner v. State*, 349 Ark. 715, 80 S.W.3d 383 (2002), and *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001). Our decision in *Turner* is inapposite because it concerns a claim of ineffective assistance of counsel with regard to a speedy-trial violation. *Phillips* does not support appellant's argument because it stands for the proposition that the reliability of a pretrial identification is for the jury to determine. More fundamentally, appellant is raising on appeal an issue of law that he did not present to the circuit court. At the hearing level, appellant did not raise the argument that as a matter of law the circuit court was not permitted to assess the prejudice prong of the *Strickland* standard on the jury-instruction issue because to do so would place the court in the role of the fact-finder. We do not consider issues raised for the first time on appeal. *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63. Because appellant did not present this argument to the circuit court, we decline to address the merits of this contention.

Next, appellant contends that his counsel was ineffective for not calling an expert witness to testify about the effects of PCP. The decision of whether to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37. *Feuget v. State*, 2015 Ark. 43, ___ S.W.3d ___; *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001) (per curiam). An attorney's decision not to call a particular witness is largely a matter of professional judgment, and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not, in itself, proof of ineffectiveness. *Lee v. State*, 2009 Ark. 255, 308 S.W.3d 596. Moreover, the omission of a witness when his or her testimony is cumulative does not deprive the defense of vital evidence. *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000); *Helton v. State*, 325 Ark. 140, 924 S.W.2d 239 (1996).

Here, trial counsel offered testimony as to the effects of PCP through the testimony of the medical examiner. Appellant has failed to demonstrate that counsel was ineffective for not presenting an additional expert witness to give essentially the same testimony on the subject. Therefore, we cannot say that the circuit court's finding on this issue is clearly erroneous.

Affirmed.

*Benca & Benca*, by: *Patrick J. Benca*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.