Cite as 2025 Ark. App. 237

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-23-761

| | | |
|---|---|---|
| MARKELLE DAVIS | | Opinion Delivered April 16, 2025 |
| | APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-19-321] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BRENT HALTOM, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Markelle Davis filed a timely petition in the circuit court seeking postconviction relief under Rule 37.1 of the Arkansas Rules of Criminal Procedure. The circuit court denied the petition, and Davis appealed. On appeal, Davis contends that his trial counsel, Brandon Pickett, provided ineffective assistance by (1) advising him to reject a plea offer and (2) failing to request a search of Davis's vehicle before trial to locate the weapon used in the underlying offense. We affirm.

On April 16, 2019, Davis was "play fighting" with Aaliyah Pearson in the parking lot of his friend's apartment. The play escalated, and Davis hit Pearson with his gun. Jaqualyn Paxton tried to intervene, and Davis and Paxton exchanged blows before being separated. Davis then shot Paxton from about three feet away. Paxton died. Davis fled but was pulled over and arrested. The car was searched twice, but the gun was never found before trial.

Davis was charged in the Miller County Circuit Court with one count of first-degree murder with an enhancement for using a firearm. Before trial, he was offered a plea deal of thirty years for second-degree murder plus a fifteen-year firearm enhancement. Pickett advised him that he would have to serve 50 or possibly even 25 percent of that sentence. Pickett was "super confident that if the jury would hear the evidence that [Davis] wouldn't be convicted of murder one." At the Rule 37 hearing, Pickett explained:

| [DAVIS'S COUNSEL]: | Did you ever tell him that you would not let him plead guilty to murder two?. . . Did you ever say to him, "I am not going to let you plead to murder two"? |
|---|---|
| PICKETT: | I – – I don't recall saying that, but that sounds like something that we could have talked about during our conversations. And if Markelle feels like that I told him that, then that might have been one of the conversations that we had. I – – I treated Markelle like a young man that we were fighting for his life. So I wanted him to know that we were going to be there for him. But we can't let him not plead. If Markelle would've came to me and said, "45 years"; we would have had to take the deal. But that was – – once we had that initial talk, that was not a discussion anymore really. |
| [DAVIS'S COUNSEL]: | So it is possible that you said – – you said. "I'm not going to let you."? |
| PICKETT: | That – – that doesn't sound like something I would say. Because I've never said that to any other client before, but I'm not going to call him a liar about it. So, I do not know . . . . I don't recall. |

Davis declined the plea deal and went to trial. At the trial, Pickett told the jury that Davis shot Paxton that night but that Davis had a clip in the gun that did not belong in it, and that was what caused the gun to fire. Twice during the trial, Pickett requested that the car be

brought to the courthouse so that Davis could retrieve the gun. Pickett did not know exactly where in the car the gun was. The court instructed counsel that if Davis disclosed the gun's specific location, he should let everyone know.

The circuit court instructed the jury on first-degree murder, second-degree murder, and manslaughter. During its closing argument, the State commented on the fact that Davis never revealed the location of the gun. During the defense closing, Pickett explained that Davis did not intentionally shoot Paxton but that he acted recklessly and negligently by "waving [the gun] around" when it was fired. The jury convicted Davis of first-degree murder and found that he had used a firearm in the commission of the crime.

Davis testified during the sentencing phase. He said he was just "playing," and the gun "went off" when he was waving it. When he got pulled over, he put the gun under the carpet on the passenger side. He did not tell police where the gun was when he was stopped because his "head was spinning." Also introduced were some emails Davis had sent to his friends from jail, stating that he was just going to get a little time, and he would be home in no time. He was convinced there was no way he would be convicted of first-degree murder. During sentencing, Pickett even attempted to ask, "[Counsel for the State] spoke about you saying you weren't worried about the time you were going to face. Is it true that your defense team told you that there is no way with the evidence presented that you would be convicted of murder one?" (This question ended up needing to be rephrased.)

The jury returned a sentence of thirty-three years for the homicide and an additional fifteen years for the firearm enhancement. Davis appealed to this court, and we affirmed his

3

conviction in *Davis v. State*, 2021 Ark. App. 104. On May 26, 2021, Davis filed a petition for postconviction relief under Arkansas Rule of Criminal Procedure 37.1. In that petition, Davis alleged that he was denied effective assistance of counsel because Pickett did not properly explain the offer and parole eligibility, Pickett told him they could get a lighter sentence than the offer at trial, and had he understood all the consequences of going to trial, he would have accepted the offer. He further argues in his petition that Pickett should have arranged for a search of the vehicle before trial.

After a hearing, the circuit court adopted the State's proposed findings of fact and conclusions of law denying Davis's Rule 37 petition. Davis timely appeals, arguing he was denied effective assistance of counsel because Pickett (1) rendered objectively unreasonable legal advice when advising Davis to reject the plea deal and (2) should have requested a search of Davis's car before trial to locate the gun.

This court will not reverse a circuit court's decision to grant or deny postconviction relief unless it is clearly erroneous. *Houghton v. State*, 2015 Ark. 252, 464 S.W.3d 922. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Turner v. State*, 2016 Ark. 96, 486 S.W.3d 757.

Our standard for ineffective-assistance-of-counsel claims is the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Rasul v. State*, 2015 Ark. 118, 458 S.W.3d 722. To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance

4

prejudiced his defense. *Mister v. State*, 2014 Ark. 446. Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *Houghton*, 2015 Ark. 252, 464 S.W.3d 922.

Defendants have a Sixth Amendment right to counsel, and that right extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156 (2012). Where trial counsel's performance is deficient for recommending that the defendant reject a plea offer, the *Strickland* test is satisfied where the claimant shows a reasonable probability that, but for the defective performance, he and the circuit court would have accepted the guilty plea. *Id.*

Counsel is presumed effective, and allegations without factual substantiation are insufficient to overcome that presumption. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55. A petitioner claiming deficient performance must show that counsel's representation fell below an objective standard of reasonableness; however, this court indulges in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* A petitioner has the burden of overcoming the presumption that counsel is effective by identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

Davis contends that his situation closely aligns with the facts in *Lafler*, *supra*. In *Lafler*, the United States Supreme Court clarified that the Sixth Amendment right to counsel extends to the plea-bargaining process. Notably, all parties in *Lafler* agreed that the defendant

received ineffective assistance of counsel. The facts in *Lafler* are somewhat similar to those here:

> On the evening of March 25, 2003, respondent pointed a gun toward Kali Mundy's head and fired. From the record, it is unclear why respondent did this, and at trial it was suggested that he might have acted either in self-defense or in defense of another person. In any event the shot missed and Mundy fled. Respondent followed in pursuit, firing repeatedly. Mundy was shot in her buttock, hip, and abdomen but survived the assault.
>
> Respondent was charged under Michigan law with assault with intent to murder, possession of a firearm by a felon, possession of a firearm in the commission of a felony, misdemeanor possession of marijuana, and for being a habitual offender. On two occasions, the prosecution offered to dismiss some of the charges and to recommend a sentence of 51 to 85 months for the remaining charges, in exchange for a guilty plea. In a communication with the court, respondent admitted guilt and expressed a willingness to accept the offer. Respondent, however, later rejected the offer on both occasions, allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder Mundy because she had been shot below the waist. On the first day of trial the prosecution offered a significantly less favorable plea deal, which respondent again rejected. After trial, respondent was convicted on all counts and received a mandatory minimum sentence of 185 to 360 months' imprisonment.

*Lafler*, 566 U.S. at 160–61.

And so, while we agree with Davis that there is a significant similarity, it's important to recall that in *Lafler*, the issue of deficient performance was conceded by all parties before reaching the Supreme Court.

This court and our supreme court have had the opportunity to apply *Lafler* a few times, and Davis points to the supreme court's application of it in *Beavers v. State*, 2016 Ark. 277, at 6, 495 S.W.3d 76, 80–81, where the court reversed and remanded the circuit court's denial of Beavers's postconviction relief, in part, where trial counsel admitted at the hearing

6

that he had given Beavers incorrect information about parole eligibility for second-degree sexual assault. Moreover, in *Beavers*, trial counsel also testified at the Rule 37 hearing that he was "convinced"—despite also acknowledging that no case law supported his legal theory—that the appellate court would reverse a conviction because he believed that a statement Beavers gave to an investigator would be suppressed. *Id.* at 7, 495 S.W.3d at 81.

There is no constitutional requirement for defense counsel to inform his or her client about parole eligibility, and the failure to impart such information does not fall outside the range of competence demanded of attorneys in criminal cases. *Joyner v. State*, 2021 Ark. 78, at 18, 621 S.W.3d 124, 136. However, as we saw in *Beavers*, providing patently incorrect information in addition to recommending going to trial under an incorrect legal theory does fall below an objective standard of reasonableness.

That said, again, in both *Beavers* and *Lafler*, counsel conceded that they gave bad legal advice. We do not think that bad advice was rendered here, and we are not left with the definite and firm conviction that a mistake has been committed. Here, Pickett testified that he explained to Davis that he would be eligible for parole after serving as little as 25 percent of the sentences; and he further testified that he sat down and did the math with Davis, researched parole eligibility, and even consulted a few contacts at the Fayetteville Public Defender's Office, and he communicated all that information to Davis.

Davis says that Pickett gave him every impression that he would not be convicted by a jury on first-degree murder. And Pickett did agree in the Rule 37 hearing that he was very

confident and conveyed that confidence to Davis over the course of several discussions: "I

didn't say 'no way.' But I said we had a really good shot." Pickett testified further:

> [A]t the time I was confident. Markelle was confident because he knew it was the
> truth, that he didn't mean to do it. And I believe Markelle that he didn't mean to do
> it. So we rolled the dice. And when they gave him 33 years we were like, well it wasn't
> life.

But regarding his rejection of the plea deal specifically, counsel was clear that Davis knew if

he did not take the offer, he was facing first-degree murder and possibly life in prison.

Counsel pursued the trial strategy he and Davis agreed on. The Constitution guarantees only

that counsel be competent, not omniscient, *Berks v. State*, 2016 Ark. 364, at 5, 501 S.W.3d

366, 370, and Pickett's trial strategy was sound under the circumstances, albeit not

successful.

Davis next contends that Pickett did not properly prepare for his trial because Pickett

did not go to the place where Davis's car was impounded and search the vehicle himself or

arrange another search of the car. Davis consistently maintained that the gun was in the car,

Pickett did not make a reasonable investigation, and another investigation was necessary.

Davis states he was prejudiced because at trial, the prosecution on several occasions

mentioned the fact that the gun was never found and used it as an opportunity to attack

Davis's credibility.

It is well established that defense counsel cannot rely on discovery as a total substitute

for his own investigation. *Garrison v. State*, 13 Ark. App. 245, 682 S.W.2d 772 (1985). To

succeed on a Rule 37 petition, petitioners must also delineate the actual prejudice that arose

8

from the failure to investigate and demonstrate a reasonable probability that the specific materials that would have been uncovered with further investigation could have changed the trial outcome. *E.g., Reynolds v. State*, 2023 Ark. App. 106, 661 S.W.3d 259.

Here, Davis told Pickett that the gun was in Davis's car but did not tell him the specific location. Pickett informed the prosecutor that Davis maintained that the gun was still in the car. Pickett was told by the prosecutor that Davis's car had been searched twice and that the gun was not in the car. Given that statement, Pickett decided to "leave it alone." In light of what little information Davis had given him and the knowledge that the car had been searched twice by police, Pickett's decision not to conduct a further search of the car was not unreasonable.

Furthermore, there is some indication that Pickett's trial strategy with regard to the gun was to have the car towed to the courthouse and allow Davis to retrieve the gun during the trial. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *E.g., Hoover v. State*, 2024 Ark. App. 255, at 4, 688 S.W.3d 155, 159.

After a thorough review, we are not left with a definite and firm conviction that a mistake was committed, and we affirm.

Affirmed.

TUCKER and WOOD, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.